USDC SCAN INDEX SHEET

















ANDY    1/24/00    10:08

3:99-CV-02560   NUVASIVE INC V. MEDTRONIC INC

*71*

*NTCF.*

ORIGINAL

FILED

00 JAN 21 AM 11:52

BY: _____ DEPUTY

R. Gaylord Smith (CA Bar #72726)
Ernest Slome (CA Bar #122419)
LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP
A Limited Liability Partnership including Professional Corporations
550 West C Street, Suite 800
San Diego, California 92101
Telephone: (619) 233-1006
Facsimile: (619) 233-8627

Cynthia A. Ricketts (AZ #012668)
Rawle Andrews, Jr. (D.C. #436283)
Squire, Sanders & Dempsey L.L.P.
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004-4498
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

Rita McConnell (MN #0069826)
7000 Central Avenue, N.E.
Minneapolis, Minnesota 55432
Telephone: (612) 514-3349
Facsimile: (612) 514-8667

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUVASIVE, INC., a Delaware corporation, and EDWARD D. BIRD, JR., an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MEDTRONIC, INC., a Minnesota corporation, <br><br> Defendant. | Case No. 99 CV 2560 JM AJB <br><br> **NOTICE OF FILING EXCERPTS OF JOSEPH LACOB DEPOSITION** <br><br> **Hearing Date: January 21, 2000** <br> **Time: 1:30 p.m. (PT)** <br> **Place: Courtroom No. 6 (3rd Floor)** |

NOTICE OF FILING EXCERPTS OF
JOSEPH LACOB DEPOSITION

71



On January 19, 2000, the deposition of Joseph Lacob, a partner with the venture capital firm Kleiner, Perkins, Caulfield and Byers and a member of plaintiff NuVasive, Inc.'s board of directors, was taken. The following excerpts from Mr. Lacob's deposition, which are attached hereto as Exhibit 1, filed under seal, are relevant to Medtronic's Motions to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction:

- Mr. Lacob is a member of NuVasive's board of directors. (15:19-21).

- Mr. Lacob became aware of Edward Bird ("Bird") when Mr. Bird was presented as a candidate for the position of Chief Executive officer of NuVasive. (15:24-16:8).

- Mr. Lacob interviewed Mr. Bird for NuVasive's CEO position in the summer of 1999. (21:21-23).

- Mr. Lacob was interested in hiring a CEO that had a strong sales and marketing background and Mr. Bird had a background in sales and marketing that "would serve him well as CEO." (23:14-22).

- As a general rule, Mr. Lacob considers whether a candidate he is interviewing has noncompete obligations. (27:22-29:4).

- It would be customary for "someone to sign a confidentiality agreement if they were going to learn about NuVasive technology or NuVasive products." (32:18-23).

•   It would be desirable to have a vice president of sales and marketing with a background in the spinal and orthopedic implant area. (47:17-20).

RESPECTFULLY SUBMITTED this 21st day of January, 2000.

_____
R. Gaylord Smith
Ernest Slome
LEWIS, D'AMATO, BRISBOIS &
BISGAARD LLP
A Limited Liability Partnership
including Professional Corporations
550 West C Street, Suite 800
San Diego, California 92101
Telephone: (619) 233-1006
Facsimile: (619) 233-8627

Cynthia A. Ricketts
Rawle Andrews, Jr.
Squire, Sanders & Dempsey L.L.P.
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004-4498
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

Attorneys for Defendant

## PROOF OF SERVICE

I am employed in the City and County of San Diego, State of California where this service occurs. I am over the age of 18 and not a party to the within action. My business address is 550 W. C Street, Suite 800, San Diego, California 92101.

On January 21, 2000, I served the attached:

## NOTICE OF FILING EXCERPTS OF JOSEPH LACOB DEPOSITION

on the party(ies) in this action by placing a true copy thereof in a sealed envelope(s), addressed as follows:

Jennifer A. Kearns                        (Counsel for Plaintiffs)
Craig E. Hunsaker
Brobeck, Phleger & Harrison LLP
550 West "C" Street, Suite 1300
San Diego, California  92101-3532
Facsimile: (619) 234-3848

James A. Gale                             Via Facsimile
Attorney at Law
Feldman Gale & Weber P.A.
Miami Center, 19th Floor
201 South Biscayne Boulevard
Miami, Florida  33131-4332

      (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at _____, San Diego, California, following ordinary business practices. I am familiar with the practice of _____ for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

      (BY PERSONAL SERVICE) I caused each such envelope to be delivered by hand to the addressee(s) above. The actual

NOTICE OF FILING EXCERPTS OF
JOSEPH LACOB DEPOSITION
               -4-                                                99cv2560

Declaration of Personal Service shall be filed upon its receipt, within the applicable statutory deadlines.

(BY HAND-DELIVERY) I delivered by hand each sealed envelope to the addressee(s) above.

(BY FACSIMILE) I transmitted the above-listed document(s) to the party(ies) listed above via facsimile on _____, 2000. No transmission error was reported by the facsimile machine.

(BY FEDERAL EXPRESS) I am readily familiar with the practice of _____ for collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Diego, California on the 21st day of January, 2000.

_Sherri L. Waller_
_____

NOTICE OF FILING EXCERPTS OF
JOSEPH LACOB DEPOSITION

99cv2560

-5-

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

--oOo--


NUVASIVE, INC., a Delaware      )
corporation, and EDWARD D.      )
BIRD, JR., an individual,       )
                                )
            Plaintiff,          )
                                )
      vs.                       ) Case No. 99 CV 2560
                                )
MEDTRONIC, INC., a Minnesota    )
corporation,                    )
                                )
            Defendants.         )
_____)


DEPOSITION OF

JOSEPH LACOB

_____

January 19, 2000


REPORTED BY:  LARRY BOSTOW, CSR# 5941

15

subject to continuing the deposition if these issues need to be addressed with the magistrate.

Q. Do you have any role in managing NuVasive?

A. No.

Q. Have you ever?

A. No.

Q. Does anyone at Kleiner Perkins have any role in managing NuVasive?

A. No.

Q. Were there any positions at NuVasive which required the approval of Kleiner Perkins for NuVasive to hire that person?

A. As a director of the company it is traditional that we would review officers and, sometimes, further down the organization. That all depends on the working relationship between the board and the CEO.

Q. Are you a member of the board of directors?

A. I am.

Q. Is anyone else at Kleiner Perkins?

A. No.

Q. When did you first become aware of who Ted Bird was?

21

Do you recall receiving that letter?

A. I don't recall it, per se. But it looks like something that he would have sent and obviously did.

Q. I'm not asking you to assume that.

Do you recall receiving biographical information from Mr. O'Hara about Mr. Bird?

A. As I said, I don't recall the exact -- I don't recall receiving it, per se.

I interviewed a lot of people for a lot of companies. But this does look like a document that I probably saw.

Q. Do you keep records relating to the interviews you conduct?

A. I do not.

Q. What happens to the files on a particular person?

A. I toss them.

Q. Immediately?

A Immediately.

Q. And Mr. Bird interviewed with you at some time during the summer of 1999?

A. That's correct.

Q. And tell me about that interview.

Was it in your office?

22

A.   I believe it was in my office.  And I remember vaguely -- I don't remember all the details of the meeting, but I do remember that I liked him, I thought that he was a very nice guy, he had a great personality.  I thought that he could potentially be a CEO someday.

But I thought he was a little bit inexperienced and didn't quite have the overall capabilities for the job that we were looking for at the time.

Q.   That was your, I guess, initial reaction following the interview?

A.   I don't know if it was initial but that's what I concluded.

MS. KEARNS:  Just give me a second.

MR. BONNER:  Sure.

(Off the record.)

MR. BONNER:  Q.  Did Mr. Bird talk to you about his experience in the medical device industry?

A.   I would imagine he did.  That's generally what I ask.

Q.   And what did he say about his experience?

A.   I don't remember.

23

Q.   Did he mention that he had a lot of
contacts in the industry?

A.   I don't recall anything like that.

Q.   Did he discuss his customer relations
experience in the industry?

A.   Again, I don't recall specifically
whether we would have had that discussion or not.
I was evaluating him on a general basis.   It was a
one time interview.

Q.   How long did the interview last?

A.   I don't remember.

Q.   Did you have dinner with him?

A.   I do not believe I did.

Q.   Were you interested in hiring someone as
CEO that had a strong sales and marketing
background?

A.   Yes.

Q.   Was it your impression that Mr. Bird fit
that bill?

A.   He had a background in sales and
marketing which would have served him well, I
suspect, and would serve him well as a CEO.

Q   And what makes you say that?   What about
Mr. Bird's background?

A.   I don't recall exactly, I'm just telling

27

employment agreements with Medtronic or Sofamor Danek?

A.   No.

Q.   Were you aware of the noncompete obligations that Mr. Bird might be subject to?

A.   I don't remember anything of that nature.  It's possible it was mentioned but I don't know.

Q.   Is that something that goes into your consideration when you are hiring someone for the positions that Mr. Bird was seeking?

MS. KEARNS:  Objection.  Relevance.

Relevance to the extent it inquires whether it's a factor that is generally considered.  To that extent I instruct the witness not to answer.

If you want to ask whether he in fact considered it vis-a-vis Ted Bird's candidacy, that's fine.

THE WITNESS:  So what's the question exactly?

MR. BONNER:  Q.  Did you consider the existence or nonexistence of noncompete obligations in evaluating Ted Bird, or other candidates for that matter, for the CEO position?

32

the answer is "Yes".

Q. Are you aware that Mr. Bird signed a confidentiality agreement with NuVasive in connection with his interviewing?

A. Interviewing for which job?

Q. Interviewing with NuVasive.

A. When?

Q. I believe it was the summer of '99.

A. No, I was not aware of that.

Q. Were you aware that he signed a confidentiality agreement at any time before he became an employee of NuVasive?

A. No, I can't say that I was.

Q. So I take it you weren't involved in requesting Bird or others to sign confidentiality agreements who were interviewing for positions at NuVasive?

A. I was not directly involved but it would be customary for a company to ask someone to sign a confidentiality agreement if they were going to learn about NuVasive technology or NuVasive products. I am not saying that I know of that happening in this case but it would be customary.

Q. Why would it be customary?

A. Because we have technology that -- In

47

hire Bird as the CEO, NuVasive hired bird as a vice president. And these lines of inquiry don't relate to his hiring as CEO because he was not hired as CEO.

And I think whether something might arguably be desirable had Ted Bird been hired as CEO is not relevant.

You can ask what was taken into consideration in the hiring of Ted Bird as vice president, if this witness knows. This witness has already testified, though, that Kleiner Perkins was not involved in the decision to hire Ted Bird as VP.

MR. BONNER: Q. Let me rephrase the questions and ask you as it relates to the vice president of sales and marketing position.

Would it be desirable to have a vice president of sales and marketing with background in the spinal and orthopedic implant area?

A. Yes.

Q. And would it be desirable to have a vice president of sales and marketing that had contacts with specific doctors and surgeons in the industry?

A. Not necessary.